IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Daisy Smalls, ) | C/A No. 0:13-1324-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Daisy Smalls ("Smalls"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

### ADMINISTRATIVE PROCEEDINGS

In May 2010, Smalls applied for DIB and SSI, alleging disability beginning January 3, 2009.[1] Smalls's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 3, 2012, at which Smalls, who was represented by Eleanor Swierk, a non-attorney representative, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on January 10, 2012 denying benefits and concluding that Smalls was not disabled. (Tr. 19-30.)

---

[1] Smalls later amended her alleged onset date to July 4, 2009.

Page 1 of  16



Smalls was born in 1962 and was forty-seven years old at the time of her amended alleged disability onset date. (Tr. 178.) She has a high school education and past relevant work experience as a receptionist and a sewing machine operator. (Tr. 241-42.) Smalls alleged disability due to her right shoulder, right wrist, and lower back pain. (Tr. 240.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through January 30, 2011.

2. The claimant has not engaged in substantial gainful activity since July 4, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

\* \* \*

3. The claimant has the following severe impairments: status post right shoulder and wrist arthroscopy; peripheral nerve compression of the right arm; lumbar degenerative disc disease; and obesity (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour work day. The claimant cannot perform any overhead work and she can perform only occasional handling. The claimant must never crawl or climb and she must avoid work hazards.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born . . . [in] 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).



9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 4, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-30.) Smalls submitted additional evidence to the Appeals Council, which denied her request for review on March 12, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 8-12.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



> (4) whether the claimant can perform her past relevant work; and
>
> (5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Smalls raises the following issues for this judicial review:

I.  The Commissioner failed to show at step five of the sequential evaluation process other work that the Plaintiff could perform.

II. The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

III. The ALJ failed to properly evaluate the credibility of the Plaintiff.

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

**A.   Performance of Other Work**

Smalls first argues that the ALJ erred at Step Five of the sequential process. Specifically, Smalls argues that according to the information in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, she was precluded by her residual functional capacity from performing two of the three jobs provided by the vocational expert in response to the ALJ's hypothetical question. The hypothetical question at issue included the capacity to perform light work with no overhead work, only occasional



handling, no crawling or climbing, and avoiding work hazards. In response to this hypothetical question, the vocational expert testified and the ALJ found that Smalls could perform the requirements of an usher, a construction fire watcher, and a parking lot attendant. Smalls argues that there is an unresolved conflict between the DOT and the vocational expert's testimony that Smalls could perform the jobs of construction fire watcher and parking lot because according to the DOT these jobs require frequent handling and Smalls was limited to occasional handling, and the vocational expert did not acknowledge or explain this contradiction as required by SSR 00-4p. The Commissioner does not challenge this argument; rather, she argues that any error was harmless as the vocational expert also identified the job of usher with approximately 1,000 positions in the local economy and 71,000 positions nationally.

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence that other work exists in significant numbers in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). Smalls argues that in light of the vocational expert's indication that limiting the hypothetical individual to only occasional handling was "pretty significant" and that "[t]here are only about seven percent of the DOT jobs that would require only occasional handling," (Tr. 59), the ALJ may have found that Smalls's occupational base was substantially eroded if he knew that two of the three jobs were precluded by the information in the DOT. However, Smalls fails to cite any authority to support such a speculative finding or interpretation at Step Five. Moreover, the United States Court of Appeals for the Fourth Circuit has previously found as few as 110, 153, and 650 jobs to be significant enough numbers to satisfy the Commissioner's burden. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying Step Five under the sequential



evaluation analysis); Hodges v. Apfel, No. 99-2265, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (finding 153 jobs equaled a significant number); Hyatt v. Apfel, No. 97-2225, 1998 WL 480722, at *3 (4th Cir. Aug. 6, 1998) (finding 650 jobs in South Carolina constituted a significant number). Therefore, the court finds Smalls's arguments unpersuasive. Further, the court finds that Smalls has failed to demonstrate that the existence of approximately 1,000 usher positions in the local economy and 71,000 usher positions nationally is insufficient to meet the Commissioner's burden to provide evidence of that other work exists in significant numbers in the national economy that a claimant could perform. See Walls, 296 F.3d at 290; 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2).

**B.     Residual Functional Capacity**

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC. See SSR 96-8p, 1996 WL 374184. The RFC assessment must be based on all of the relevant evidence in the record.[3] Id. The ALJ must address both the individual's exertional and nonexertional capacities. Id., at *5-6. Further, the assessment

---

[3] This evidence includes: medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184, at *5.



must include a narrative discussion describing how the evidence supports the ALJ's conclusion. Id., at *7.

Smalls argues that the ALJ failed to properly explain how Smalls's severe impairment degenerative disc disease limited her ability to sit and/or stand for six hours in an eight-hour day. The opinion evidence supporting the conclusion that Smalls can perform light work appears to be limited to the opinions of the state agency medical consultants. See SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner). Smalls points to selective medical evidence documenting positive raises, decreased range of motion of the lumbar spine, and back pain with movement, (Pl.'s Br. at 20-21, ECF No. 14 at 20-21) (citing Tr. 341, 342, 386), and argues that the state agency medical consultants failed to reference her degenerative disc disease or the x-rays confirming it in their opinions. However, review of these opinions reflect that the physicians explicitly discussed medical evidence that indicated that Smalls displayed tenderness in the lower back; was limited to a fifty-percent range of motion in the lower back; displayed a mildly positive straight leg raise in July 2009; and had limited motion of the lower back in September 2009. (Tr. 372, 384.)

The primary evidence of record that may indicate additional physical limitations since the amended onset date is Smalls's own testimony and self-reports, which the ALJ found were not credible. Furthermore, contrary to Smalls's argument otherwise, the ALJ's decision reflects consideration of Smalls's degenerative disc disease in formulating her RFC. In finding that Smalls's degenerative disc disease was a severe impairment but did not meet a Listing, the ALJ observed that

x-rays in July 2010 showed levoscoliosis, degenerative disc disease, and facet arthropathy at L4-5 and L5-S1 (Tr. 22), but that MRI examinations failed to reveal any significant herniations, stenosis, or nerve root impingement (Tr. 22, 340).  In discussing his RFC analysis, the ALJ again discussed the July 2010 x-rays; he also observed that during examination in July 2010 Smalls displayed "mild tenderness to palpitation of the lumbar spine and paraspinous muscles but she had a normal range of motion in her cervical and lumbar spine" with negative straight leg raises bilaterally. (Tr. 25, 358-59.)  The ALJ also stated that Smalls displayed the ability "to get on and off the examination table without difficulty by herself," "to walk across the room without an assistive device and with a normal gait," and "to walk on her toes and heels, tandem walk and squat."  (Id.)  The ALJ observed that in July 2011, although Smalls reported middle back and left flank pain, examination revealed painless range of motion in her back, normal spine alignment, painless straight leg tests bilaterally, and no evidence of vertebral or costovertebral angle tenderness.  (Tr. 25, 386-87.)

    In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence.  (Tr. 23-28.)  The ALJ's discussion explained his resolution of inconsistencies or ambiguities in the evidence in the case record, such as his evaluation of Smalls's subjective complaints as well as the opinion evidence.[4]  (Id.)  Therefore, contrary to Smalls's arguments, it is clear from the ALJ's decision that he considered and discussed all of Smalls's impairments and their resulting limitations.  Upon careful

---

[4] To the extent that this issue also encompasses an argument that the ALJ erred in failing to include or discuss additional limitations based on the lay opinion from her employer, John W. Harris, the court disagrees.  The ALJ specifically acknowledged this opinion and afforded it some weight, agreeing that "the evidence shows the claimant suffered from back and shoulder impairments and she would not be able to return to her past relevant work."  (Tr. 28.)  Notably, the ALJ did not find that Smalls could perform even the current part-time job that she was performing for Harris with accommodations on a full-time basis.



review of the ALJ's decision and the record in this matter, the court finds that Smalls cannot demonstrate that the ALJ's RFC analysis is unsupported by substantial evidence or controlled by an error of law.

**C.     Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)  Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ observed that at the hearing Smalls testified that

> she works part-time for Mr. Harris for a maximum of 3 to 4 hours per day, 5 days per week. Her duties consist of light filing and answering phones. The claimant stated that she stopped sewing because she can no longer lift her right arm to the necessary level or adequately perform her job duties with the sewing machine. The claimant reported that she attended vocational rehabilitation in 2006 or 2007 but they could not help her at that time. She reported that she was involved in a motor vehicle accident in July 2009, which caused injuries to her neck and right shoulder. The claimant reported that she last received treatment from Dr. Stoddard approximately one year ago but she has an appointment at a good neighbor clinic in February or March 2012. The claimant testified that she tried to obtain an appointment at the good neighbor clinic prior to 2012 but she alleged she could not get an appointment until recently. She testified that she no longer has insurance and she cannot afford to pay Dr. Stoddard. The claimant stated that she suffers from constant pain in her back and right arm but she cannot take her medication prior to work due to severe drowsiness side effects. She stated that she is unable to sit for extended periods of time due to neck and shoulder pain and she is unable to turn her head completely to the left side. She alleged that her medications relieve the pain but the symptoms return when her medication wears off. The claimant testified that she underwent right shoulder surgery but medication does not help her residual right shoulder pain. The claimant reported that she never underwent the nerve conduction and carpal tunnel tests that Dr. Stoddard recommended after her surgery because of a lack of

Page 11 of 16



> finances. She reported that she receives $16.00 per month in food stamps. Although the claimant is right-hand dominant, she alleged that she does not use her right arm as frequently as her left arm due to pain. The claimant stated that she uses her left hand to answer the telephone and pull open the file cabinet drawer at work but she uses her right hand to separate the files in the drawer. She testified that she is able to write with her right hand for short periods of time, drive a motor vehicle and vacuum. She also stated that she lives alone but she is able to cook simple meals for herself and shop for groceries. The claimant testified that she rarely cleans her house and her sister helps her with the housework if needed. She alleged that her sister and cousin perform her yard work. The claimant reported that she enjoys doing crossword puzzles and visiting with friends at her house. She reported that her ability to focus is very limited due to her level of pain. She alleged that she can only sit for 20 minutes at a time and walk for approximately 30 minutes at a time. She stated that she uses a walking stick so she does not swing her right arm. The claimant testified that she tries to move around a lot at work because sitting exacerbates her pain.

(Tr. 23-24.) The ALJ ultimately found that Smalls's "statements concerning the intensity, persistence, and limiting effects of [some of her alleged] symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27.) In reaching this conclusion, the ALJ first found that the "medical evidence of record indicates that while the claimant has received treatment for her severe impairments since the alleged onset date, the claimant's symptoms are not as limiting as she alleged" and proceeded to summarize the medical evidence of record, which included Smalls's self-reports. (Tr. 24-26.) The ALJ found that Smalls's self-reports as well as the findings upon objective examination were inconsistent with her testimony of "such significant complaints of pain." (Tr. 36.) The ALJ also found that her credibility was further limited by her own reported daily activities, which the ALJ found were "representative of a fairly active and varied lifestyle and [were] not indicative of a significant restriction of activities or constriction of interest." (Tr. 26.) The ALJ also found that the record demonstrated that Smalls did not follow up on recommendations made by her treating doctor, including a recommended EMG and nerve conduction study, suggesting that the symptoms may not have been as serious as alleged



in connection with this application and appeal. The ALJ appears to find no good reason for this failure, finding that despite testimony that she lacked finances, "there is no evidence of record that she could not have sought out low cost or no cost treatment centers available in her area prior to the end of 2011." (Id.) Additionally, the ALJ found that the medical records reveal that the medications and physical therapy have been relatively effective in controlling Smalls's symptoms, noting her reports of improvement. The ALJ further found that (1) the medical records did not support her allegations of side effects from the use of medications; (2) that "there were significant periods of time since the alleged onset date during which the claimant has not taken any medications for [her allegedly disabling] symptoms"; (3) that her presentation upon examination was generally normal; (4) that although she underwent surgery for her right shoulder and wrist, suggesting that the symptoms were genuine and normally weighing in her favor, the surgery is "offset by the fact that the record reflects that the surgery was generally successful in relieving her symptoms"; (5) that Smalls was never prescribed any permanent assistive device for her right upper extremity or back; and (6) there is no indication that Smalls's obesity caused an inability to sustain function over an 8-hour day. (Tr. 26-27.) Finally, the ALJ found that although her part-time work activity, which has continued since the amended alleged onset date, did not constitute disqualifying substantial gainful activity, it indicated that Smalls's "daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 27.)

Smalls challenges some of the reasons offered by the ALJ to discount her credibility, arguing that her activities of daily living were inaccurately portrayed and not indicative of the ability to perform full-time work at a light level; that her testimony is contrary to the ALJ's determination that she did not seek out low cost or no cost treatment prior to the end of 2011; and that the ALJ failed to explain how her part-time work with accommodations was inconsistent with her credibility.



Upon review of the records as a whole and the parties' briefs, the court finds that Smalls has failed to demonstrate that the ALJ's determination that Smalls was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility, and the court finds the ALJ's conclusion within the bounds of substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision clearly reflects that he considered the relevant factors in weighing Smalls's credibility, one of which is her daily activities. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). Although Smalls's subjective complaints "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, the ALJ properly considered the objective medical evidence and other objective evidence in evaluating Smalls's complaints and the extent to which they impair her ability to work. See Craig, 76 F.3d at 595. Therefore, the court finds that Smalls has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**RECOMMENDATION**

For the foregoing reasons, the court finds that Smalls has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 14, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).